**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO.: 8:20-cv-2530-T-33AAS**

**ANDREW DOWLER,**

      **Plaintiff,**

**v.**

**GEICO GENERAL INSURANCE COMPANY,**
**A Foreign Profit Corporation,**

      **Defendant.**
_____/

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, RESPONSE TO STATEMENT OF
MATERIAL FACTS, AND MEMORANDUM OF LAW IN SUPPORT**

      Pursuant to the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Middle District of Florida, by and though his undersigned counsel, Plaintiff, ANDREW DOWLER ("Plaintiff"), files his Response and Opposition to Defendant's Motion for Summary Judgment, Response to Statement of Material Facts and Memorandum of Law in Support, and states:

**I.**     **INTRODUCTION**

      Defendant, GEICO GENERAL INSURANCE COMPANY ("Defendant"), Motion is not well taken, misrepresents facts, relies on bald allegations devoid of merit and must be denied.

In direct contravention of the Family and Medical Leave Act ("FMLA"), Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff for requesting utilization of and exercising his rights thereunder.

The facts of this case are simple: Plaintiff, a long-tenured employee, military veteran, and proud gay male, was FMLA eligible—a fact Defendant does not dispute. Defendant violated Plaintiff's FMLA rights. To interfere with Plaintiff's FMLA rights directly and irrevocably, Defendant placed Plaintiff on administrative suspension moments following his FMLA request during his meeting with Stafford and LoCascio on February 12, 2019. Smith made the decision to terminate Plaintiff two (2) days after he requested FMLA leave and timely submitted his FMLA certification paperwork on February 14, 2019. After thirteen (13) days of unpaid retaliatory suspension for exercising his FMLA rights and eleven (11) days after the termination decision was already made by Smith, Defendant terminated Plaintiff on February 25, 2019— retroactively to reflect a falsified termination date of February 12, 2019.  As a result, Plaintiff sustained irrevocable loss as he was never able to properly exercise his FMLA-protected leave as already approved by Defendant and before Plaintiff's unlawful termination and Plaintiff would have taken full advantage of given his serious head injury and need for FMLA-protected leave. Defendant cannot escape liability here.

In retaliation for utilization of FMLA leave requested by Plaintiff and attempting to exercise his FMLA rights, Plaintiff was subjected to inexplicable discipline, evaluated by manipulated, subjective "professionalism" metrics for the first time in seventeen (17) years, and ultimately, termination shortly after he requested

FMLA leave for the first time in connection with his serious head injury. Defendant's claim that it treated Plaintiff properly and terminated him for an allegedly terminable offense is fabricated, and pretext for Defendant's retaliatory animus. Rather, it is clear that Defendant interfered with Plaintiff's FMLA rights and Plaintiff's termination was based on his request for FMLA leave and availing himself to FMLA leave on the same date Plaintiff returned from hospitalization, requested FMLA leave and submitted the requisite FMLA certification to Defendant management in order to exercise his FMLA rights.

This is what this case is about and how Defendant violated Plaintiff's rights. In its Motion, Defendant sets forth a hodgepodge of facts in its attempt to circumvent liability for the violations of protected rights under the FMLA. Defendant failed to comply with its obligations under the law, and subsequently retaliating against him. Rather than abide by the strictures of well-established federal law which protect FMLA-qualifying events of its employees, Defendant chose not to do so, interfered with Plaintiff's FMLA rights, but also actively retaliated against him for exercising his rights thereunder. It is therefore liable to Plaintiff for the intentional and frankly, deplorable, violations of the FMLA and the ratification of the decisions by Defendant's management.

Defendant's Motion must be denied, in full, as the facts clearly establish that Defendant did, in fact, intentionally and willfully interfered with Plaintiff's FMLA rights and retaliated against him for exercising his protected rights thereunder.

## II.     RESPONSE TO STATEMENT OF FACTS

**Paragraph Nos. 1-4** – Admitted.

**Paragraph No. 5** – Denied. Plaintiff did not have a "history" of "inappropriate or unprofessional" behavior. ECF No. 23-2 at 79:23-25; see Declaration of Andrew Dowler attached hereto as **"Exhibit A"** at 12-15. "History of inappropriateness, no." Id. Plaintiff was subjected to sporadic, inexplicable discipline (*i.e.,* 2004, 2014, 2019) for which Plaintiff never was informed could lead to his termination. ECF No. 23-3 at Exhibit 6-9, *Ex.* A at 12-15.

**Paragraph No. 6** – Denied in part. Plaintiff was not advised that his purported conduct was a violation of Defendant policies and procedures, specifically, there was no reference of any violation of the Fair Workplace Policy or the Code of Conduct— which are variably, arbitrarily, and capriciously enforced—by Defendant by Tiffany Vilches ("Vilches"), Defendant's direct supervisor, and Carmen Smith ("Smith"), Vilches' direct supervisor. ECF No. 23-2 at 26:14-24; 54:18-55:12; *Ex.* A at 16.

**Paragraph No. 7** – Denied in part. See Plaintiff's Response in Opposition to Paragraph No. 6.

**Paragraph No. 8** – Denied in part. See Plaintiff's Response in Opposition to Paragraph No. 6. "It might have been a little snarky, sure, but as far as it being a violation of the fair workplace policy, I don't recall her saying that." ECF No. 23-2 at 57:11-13.

**Paragraph No. 9** – Denied in part. "Well, I said 'You bastard,' absolutely, yes. Very loudly and very theatrically and with jazz hands." ECF No. 23-2 at 77:9-12. Plaintiff was "coached" with respect to "[i]nappropriate language" only, from which Plaintiff

refrained through until his unlawful termination. ECF 23-2 at 77:11-18. As clear display that this was in no way a pattern, Plaintiff acknowledged that in terms of language used, "I shouldn't be saying that." Id. Plaintiff did not revel in engaging in activity that was non-compliant with policies and procedures. *Ex.* A at 17-18.

**Paragraph No. 10** – Admitted.

**Paragraph No. 11** – Disputed in part. Plaintiff was medically and functionally impeded from coherently, accurately or with full consciousness communicate with anyone *via* text message, Vilches or his work, in or around 6:00am on February 11, 2019, while at the hospital, just an hour following Plaintiff's life-threatening automobile accident—and given the head injury with which Plaintiff was later diagnosed and received treatment. ECF 23-2 at 85:20-86:22; *Ex.* A at 19. Plaintiff testified confirming:

> *"I was **trying to message work, I was trying to let them know I was in the hospital and I wasn't going to be able to make it, I could not operate the phone**… I don't know if you have ever had a concussion. Its very disconcerting…But here, I just got out of an accident. I'm thankful to be alive, and **I can't operate the phone…Come to find out, in the medical paperwork, which you can see, they advise, don't read anything. Don't do anything that requires thinking or anything like that… [The nurse nor doctor] doesn't explain any of that."***

Id.

**Paragraph No. 12** – Disputed in part. In response to Vilches' February 8, 2019 text message stating, "You've been doing a great job [thumbs up emoji]," at 6:12am, on February 11, 2019, while Plaintiff suffered a severe head injury and in the emergency room at Jupiter Medical Center, Plaintiff sent Vilches a message which ambiguously

and cryptically read: "Thank you, you have had a nlot to do with that. Your leadership style has an unflinching authoritative grasp on an authosempathy. [misspelling not omitted]." ECF No. 23-6; *Ex.* A at 19. Plaintiff recall what the term "autosempathy" refers to nor is it recognized as a word by any accredited dictionary source—further evidence of Plaintiff's poor mental condition. ECF 23-2 at 85:20-86:22; *Ex.* A at 20-21. The unsupported contention that is in any way an "idiosyncratic" term utilized by Plaintiff is simply untrue. *Ex.* A at 22.

**Paragraph No. 13** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 12.

**Paragraph No. 14** – Disputed in part. In and around 6:12am, on February 11, 2019, while Plaintiff suffered a severe head injury and in the emergency room at Jupiter Medical Center, Plaintiff inadvertently texted Vilches a photograph contained in his phone—an unfortunate oversight as Plaintiff had intended to send Vilches a photograph of his hospital bracelet. ECF 23-2 at 99:21-100:20; *Ex.* A at 23. Before Plaintiff could explain or apologize to Vilches for the inadvertently sent photograph, Vilches blocked Plaintiff's contact number and did not receive his messages full of remorse and explaining the unintentionality of the situation. ECF 23-2 at 107:5-7; *Ex.* A at 24. *Ad nauseum*, Plaintiff communicated to Vilches' Manager, Carmen Smith ("Smith"), Human Resources Supervisor, Tynetta Settles ("Settles") and Human Resources Compliance Specialist, Tracy Stafford ("Stafford"), that this message was sent inadvertently while under the influence of narcotic medication, experiencing

mental and cognitive issues, and seeking treatment for a head injury (*i.e.,* concussion) in the emergency room of Jupiter Medical Center after a serious automobile accident. ECF 23-2 at 85:20-86:1; 93:10-94:1; *Ex.* A at 25.

**Paragraph No. 15** – Disputed. Plaintiff sent the subject photograph on accident. ECF 23-2 at 93:10-94:1; *Ex.* A at 26. There can be no correlation between Plaintiff's text message and the inadvertently transmitted photograph thereafter. *Ex.* A at 27. Any purported connection based on the term "authoritative grasp" and the nude photograph is mere conjecture—which is not true. *Ex.* A at 28

**Paragraph Nos. 16-17** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 14.

**Paragraph No. 18** – Disputed in part. Defendant's adverse employment action against Plaintiff was unwarranted. *Ex.* A at 53.

**Paragraph No. 19** – Disputed in part. Plaintiff inadvertently sent the subject photograph to Vilches. ECF 23-2 at 85:20-86:1; 93:10-94:1; *Ex.* A at 29. Plaintiff never intended to send the subject photograph to Vilches, but since it was done inadvertently, Plaintiff absolutely did not send the subject photograph for purposes of sexually harassing Vilches. ECF 23-2 at 93:10-94:1; *Ex.* A at 29. What is more, Plaintiff identifies as a gay male, of which Vilches and others working with Plaintiff were well-aware so any allegations that sent this to Vilches in any manner other than inadvertency is absurd. ECF NO. 23-2 at 101:15-16; *Ex.* A at 30-31. "Tiffany knows I'm gay." Id. Vilches has even exchanged in years of text messaging between her and

Plaintiff, on a very personal level, in which the term "gaykay" and other informalities are tossed around with Vilches responding in jest, "Lol". *Ex.* A at 32; *see also* text messages between Plaintiff and Vilches attached hereto as Composite "**Exhibit B**." Plaintiff's sexuality was not lost on Vilches—which makes her contention that she is "uncomfortable" around Plaintiff very illogical as they have worked together, desks aligned side-by-side, for years. ECF 23-2 at 27:21-24; *Ex.* A at 33. Tellingly, this was the first Vilches expressed any uncomfortability working with Plaintiff. *Ex.* A at 34.

**Paragraph No. 20** – Admitted.

**Paragraph No. 21** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 19.

**Paragraph Nos. 22-23** – Admitted.

**Paragraph No. 24** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 19.

**Paragraph No. 25** – Admitted.

**Paragraph No. 26** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 19.

**Paragraph No. 27** – Disputed. Plaintiff never received a call from Smith on February 11, 2019. *Ex.* A at 35.

**Paragraph No. 28** – Disputed. See Plaintiff's Response in Opposition to Paragraph Nos. 14 and 19.

**Paragraph No. 29** – Disputed in part. Plaintiff texted Teressa Knab ("Knab") on February 11, 2019, after Plaintiff's car accident and admission to the hospital due to his severe head injury, "trying to alert work that I'm not going to be there, and Tiffany did not respond to my message" in an effort to communicate that Plaintiff was in the emergency room at Jupiter Medical Center and would miss work to avoid further unwarranted adverse employment action in the form of a no-call-no-show violation. ECF No. 32-2 at 105:21-106:2; *Ex.* A at 36. Plaintiff ultimately texted Knab, who never conveyed to him any sort of disconcertion with his communication with her to Plaintiff at any time, a picture of his hospital bracelet, as he originally was trying to send to Vilches, and at 7:12am, Plaintiff sent Knab a text saying "Concussion. I think Tiffany blocked my phone number. ECF No. 32-2 at 105:4-106:7; *Ex.* A at 37. For Knab to contend she felt "uncomfortable" as a result of her very reasonable correspondence with Plaintiff is unfathomable and there is no cogent reason provided by Defendant or Knab justifying same. *Ex.* A at 38.

**Paragraph No. 30** – Denied in part. See Plaintiff's Response in Opposition to Paragraph No. 29.

**Paragraph No. 31** – Disputed in part. Plaintiff returned to the Lakeland, Florida office on the day after his car accident and serious head injury (*i.e.*, concussion), Plaintiff met with Stafford and LoCascio on February 12, 2019, to discuss his need for FMLA leave and provide her with proper documentation from his physician. ECF No. 23-2 at 111:2-22; *Ex.* A at 40. At the start of the meeting, Plaintiff explained his car accident

and the symptomology arising from his severe head injury for which he necessitated FMLA leave for further evaluation, treatment, testing, appointments, and diagnostics associated therewith. *Ex.* A at 41. The discussion next evolved to encompass the subject text message inadvertently and regrettably sent to Vilches. ECF No. 23-2 at 111:5-22; *Ex.* A at 42. After Plaintiff's statutorily protected activity, Defendant retaliatorily highjacked the meeting and informed Plaintiff that he was placed on administrative leave pending Human Resources' investigation. ECF No. 23-8 at 45:15-24; *Ex.* A at 43. Defendant failed to acknowledge nor apprise Plaintiff of his FMLA rights and never engaged of Plaintiff in the interactive FMLA process despite notification of Plaintiff's FMLA-qualifying event. *Ex.* A at 39 and 44. LoCascio never informed Plaintiff that "any wrongdoing" found rendered him terminated as of February 12, 2019—that simply never happened. *Ex.* A at 45. LoCascio suspended Plaintiff upon his return to work following his car accident on February 12, 2019, and receipt of Plaintiff's FMLA certification paperwork subsequent to Plaintiff levying his request for FMLA leave. ECF No. 23-8 at 45:15-24; *Ex.* A at 46. Tellingly, Smith, the sole decision-maker, decided to terminate Plaintiff on February 14, 2019—just (2) days after submitting his FMLA certification paperwork subsequent to his FMLA request—but did not communicate her decision to Plaintiff for another eleven (11) days while suffering financial and emotional detriment on unpaid suspension through his unlawful termination on February 25, 2019. ECF No. 23-2 at Exhibit I; *Ex.* A at 47.

**Paragraph Nos. 32-33** – Denied in part. See Plaintiff's Response in Opposition to Paragraph No. 31.

**Paragraph No. 34** – Admitted to the extent Defendant purports to offer Family and Medical Leave to its employees *via* Defendant's FMLA policy; otherwise denied. See **"Exhibit G-1"** attached to Defendant's Motion. Defendant intentionally interfered with Plaintiff's FMLA rights and subjected Plaintiff to retaliation for requesting and utilizing FMLA-protected leave thereunder in direct violation of Defendant's FMLA Policy. *Ex.* G-1; *Ex.* A at 48.

**Paragraph No. 35** – Disputed in part. The existence of a third-party benefits administrator does not obviate Defendant's legal obligations to Plaintiff under the FMLA against interference and retaliation. *Ex.* A at 49.

**Paragraph Nos. 36-37** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 31.

**Paragraph No. 38** – Admitted to the extent Defendant manipulated Plaintiff's Termination Memorandum to show Plaintiff violated Defendant's policies and procedures relating to its Code of Conduct and Fair Workplace Policy; otherwise denied. *Ex.* A at 50-51. Plaintiff was subjected to adverse employment action, twice, following his request for FMLA leave and submission of FMLA certification documentation, first by placing Plaintiff on administrative suspension the same day Defendant received Plaintiff's FMLA certification paperwork on February 12, 2019, and just two (2) days later, on February 14, 2019, Smith admitted that she decided to terminate for requesting and exercising his rights under the FMLA. ECF No. 23-11; *Ex.* A at 52. Smith was the sole decision-maker. Id.

**Paragraph Nos. 39-40** – Disputed in part. See Plaintiff's Response in Opposition to Paragraph No. 38.

**Paragraph No. 41** – Disputed. Smith provided no justification for sharply deviating from Defendant's progressive policy when dealing with Plaintiff. *Ex.* A at 53-54.

**Paragraph No. 42** – Disputed. Defendant represented in its Statement of Material Facts that Smith made the decision to terminate Plaintiff but referenced that Defendant's Corporate Human Resources provided final approval to proceed with termination. *Ex.* A at 55. Other than final approval, Defendant does not indicate whether the Corporate Human Resources could, or ever did, overturn Smith's adverse employment decisions. *Ex.* A at 56. At the time of Defendant's administrative suspension later on February 12, 2019, and termination decision made by Smith on admittedly made on February 14, 2019, Smith was well-apprised of Plaintiff's request for FMLA request and timely submission of FMLA certification paperwork earlier on February 12, 2019. *Ex.* A at 57.

**Paragraph No. 43** – Disputed in part. On February 25, 2019, Plaintiff was informed that he was terminated—retroactively dated to fallaciously represent a termination date of February 12, 2019, without explanation of why that was done. ECF No. 23-2 at 115:21-23; 152:18-19; *Ex.* A at 57-61. Plaintiff was not informed of Defendant's decision regarding his termination for thirteen (13) days following the onset of his unpaid suspension and eleven (11) days after Smith admittedly made the termination decision as the sole decision maker—which is unacceptable. Id.

**Paragraph No. 44** – Disputed. Defendant forced Plaintiff into an ultimatum by manipulating Plaintiff into resignation. *Ex.* A at 58. Plaintiff declined to resign because Plaintiff desired to retain his job and believed his resignation or separation of unwarranted. *Ex.* A at 59. Rather, on February 25, 2019, Plaintiff was terminated and his separation was retro-dated to which Plaintiff never agreed, to fit Defendant's nefarious and concocted narrative. ECF No. 23-2 at 125:7-18; 132:5-9; *Ex.* A at 61.

**Paragraph No. 45** – Disputed. See Plaintiff's Response in Opposition to Paragraph No. 31.

## III.   DEFENDANT IS IN DIRECT VIOLATION OF THE FMLA

In direct contravention of the FMLA, Defendant intentionally and unlawfully interfered with and retaliated against Plaintiff for requesting and exercising his FMLA rights. As such, Defendant's Motion must be denied in Plaintiff's favor.

It cannot be disputed that Defendant is a covered employer under the FMLA, and that Plaintiff met the hours-of-service requirements to be covered by the FMLA. *Ex.* A at ¶ 4-6. Plaintiff was FMLA eligible. *Ex.* A at ¶ 4-6.

### i.   DEFENDANT IS LIABLE FOR FMLA INTERFERENCE

The FMLA provides that Plaintiff was to be entitled to no fewer than 12 weeks of unpaid leave because of Plaintiff's serious health condition that made him unable to perform his job functions. 29 U.S.C. § 2612(a)(1)(D). Similarly, the FMLA provides that Plaintiff was to be entitled to no fewer than 12 weeks of unpaid leave because his

mother's serious medical condition and to care for him during that time. 29 U.S.C. § 2612(a)(1)(C). Defendant is liable to Plaintiff for FMLA interference.

### ii. PLAINTIFF CAN ESTABLISH A *PRIMA FACIE* CASE OF FMLA INTERFERENCE

To state a claim of interference with a substantive right, an employee need only demonstrate that he was entitled to the benefit denied. Pereda v. Brookdale Senior Living Cmty's, Inc., 666 F.3d 1269, 1274 (11th Cir. 2012). It is not necessary to allege or show that the employer intentionally deprived the employee of benefits, and no showing of ill intent is required. Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1208 (11th Cir.2001). Unlawful employer interference includes not only refusing to authorize FMLA leave, but also "discouraging an employee from using such leave." Diamond v. Hospice of Fla. Keys, Inc., F.App'x 586, 592-93 (11th Cir. 2017).

It cannot seriously be disputed that Defendant interfered with Plaintiff's FMLA rights. This Court need not look any further than the fact that Defendant never, at any time, provided Plaintiff with the necessary and proper FMLA documentation. *Ex.* A at 39 and 44. This is tantamount to not only directing Plaintiff not to utilize FMLA, but clear evidence that Defendant discouraged Plaintiff from using FMLA protected leave. Id. This is unambiguous evidence of FMLA interference with FMLA rights. Defendant's Motion must be denied.

Most egregiously, to interfere with Plaintiff's FMLA rights directly and irrevocably, Defendant placed Plaintiff on administrative suspension moments

following his FMLA request during his meeting with Stafford and LoCascio on February 12, 2019. *Ex.* A at 43. Smith admittedly made the decision (as sole decision-maker) to terminate Plaintiff just two (2) days after he requested FMLA leave and timely submitted his FMLA certification paperwork on February 14, 2019. ECF No. 23-11; *Ex.* A at 47. After thirteen (13) days of unpaid retaliatory suspension for exercising his FMLA rights and eleven (11) days after the termination decision was already made, Defendant terminated Plaintiff on February 25, 2019—retroactively to reflect a falsified termination date of February 12, 2019. ECF No. 23-2 at 115:21-23; 152:18-19; *Ex.* A at 57-61. Plaintiff sustained irrevocable loss as he was never able to properly exercise his FMLA-protected leave as already approved by Defendant and before Plaintiff's unlawful termination—which Plaintiff would have taken full advantage of given his serious head injury. *Ex.* A at 39, 44 and 61. Defendant cannot escape liability here.

### a. PLAINTIFF WAS DENIED BENEFITS TO WHICH HE WAS OTHERWISE ENTITLED UNDER THE FMLA

Defendant's argument that Plaintiff was not denied a benefit to which he was otherwise entitled pursuant to the FMLA or did not suffer prejudice as a result of Defendant's failure to apprise Plaintiff of his FMLA rights ignores reality. Plaintiff made clear that he suffered grave detriment as a result of Defendant's failure to apprise Plaintiff of his FMLA rights or engage him in the interactive FMLA process. *Ex.* A at ¶ 88-89; ECF No. 21-1 at 182:2-24.

More specifically, Plaintiff was unable to avail himself to a full twelve (12) week period of leave to which Plaintiff was entitled under the FMLA. *Ex.* A at ¶ 89; ECF No. 21-1 at 184:23-185:7. As a result, Plaintiff did not receive all the leave he necessitated or was entitled to under the FMLA (*i.e.,* statutorily protected leave)—or any of it. Id. In fact, Plaintiff was subjected to administrative suspension and terminated while he still had FMLA leave remaining—a full twelve (12) weeks. Id. Defendant intentionally interfered with Plaintiff's rights under the FMLA. Based on the foregoing, Defendant's Motion must be denied.

Even assuming *arguendo* that the above arguments do not pass muster—which they do—there can be no dispute that Defendant interfered with Plaintiff's FMLA rights. This Court need not look any further than the fact that Defendant never, at any time, provided Plaintiff with the necessary and proper FMLA documentation. *Ex.* A at ¶ 63. Defendant's conduct is tantamount to not only directing Plaintiff not to utilize FMLA, but clear evidence that Defendant discouraged Plaintiff from using FMLA protected leave. Defendant's Motion is without merit and must be denied.

### iii.  DEFENDANT IS LIABLE FOR FMLA RETALIATION

Defendant's FMLA retaliation is clear and its arguments to the contrary are flawed. Defendant's retaliatory actions rendered Plaintiff's employment untenable as he was subjected to inexplicable and sporadic discipline fifteen (15) years apart (*i.e.,* 2004, 2018/2019), evaluated by manipulated, subjective "professionalism" metrics for which Plaintiff was targeted and subjected to disparate treatment unlike any other employee, adverse employment action directed toward Plaintiff after timely

submission of his FMLA certification paperwork after requesting FMLA leave in the form of administrative suspension, Smith admittedly made the termination decision just two (2) days after Plaintiff timely submitted his requisite FMLA certification paperwork subsequent to his FMLA request to Defendant, and ultimately, Plaintiff's retaliatory termination on February 25, 2019—all after Plaintiff's statutorily protected activity at his management meeting (with Smith and Stafford) on February 12, 2019. ECF No. 23-2 at 79:23-25, 57:11-13, 77:9-18, 27:21-24, 111:2-22, 45:15-24, 115:21-23; 152:18-19, 66:22-67:8, 69:11-15; *Ex.* A at 12-16, 18, 39-44, 46-50, 52-53, 56-62.

Defendant is liable for intentionally interfering with Plaintiff's FMLA rights and as such, Defendant's must be denied.

### iv.   PLAINTIFF CAN ESTABLISH A *PRIMA FACIE* CASE OF FMLA RETALIATION

FMLA retaliation is distinct from FMLA interference in that to succeed on a FMLA retaliation claim, an employee must demonstrate that the employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010). Therefore, to state a prima facie case of retaliation under the FMLA, a plaintiff must show that: (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to a protected activity. Id. Once Plaintiff makes out a *prima facie* case of FMLA retaliation, the burden then shifts to the defendant to articulate a legitimate, non-

discriminatory reason for the adverse employment action. Id. If Defendant does so, then Plaintiff must establish pretext. Id.

It is undisputed that Plaintiff engaged in statutorily protected activity and suffered adverse employment action which satisfies the first and second prongs of Plaintiff's *prima facie* claim of FMLA retaliation and as such, Defendant addresses the causation prong in its Motion below.

### 1.  CAUSAL CONNECTION BETWEEN HIS STATUTORILY PROTECTED ACTIVITY AND ADVERSE EMPLOYMENT ACTION

Generally, "close temporal proximity between an employee's protected conduct and adverse employment action is sufficient circumstantial evidence" for establishing a prima facie case of retaliation under the FMLA, "but temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection…" Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791 (11th Cir. 2000). "[A] plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." Id. There can be no doubt that Plaintiff establishes a prima facie case of FMLA retaliation. Strickland, 239 F.3d at 1207-08 ("Proximity in time is sufficient to raise an inference of causation.").

Subjecting Plaintiff to inexplicable and sporadic discipline fifteen (15) years apart (*i.e.,* 2004, 2018/2019), evaluated by manipulated, subjective "professionalism" metrics for which Plaintiff was targeted and subjected to disparate treatment unlike any other employee, adverse employment action directed toward Plaintiff after timely submission of his FMLA certification paperwork after requesting FMLA leave in the

form of administrative suspension, Smith admittedly made the termination decision just two (2) days after Plaintiff timely submitted his requisite FMLA certification paperwork subsequent to his FMLA request to Defendant, and ultimately, Plaintiff's retaliatory termination on February 25, 2019—all after Plaintiff's statutorily protected activity at his management meeting (with Smith and Stafford) on February 12, 2019, is more than sufficient nexus to pass muster in terms of causation. ECF No. 23-2 at 79:23-25, 57:11-13, 77:9-18, 27:21-24, 111:2-22, 45:15-24, 115:21-23; 152:18-19, 66:22-67:8, 69:11-15; *Ex.* A at 12-16, 18, 39-44, 46-50, 52-53, 56-62. Defendant is liable for retaliating against Plaintiff for taking FMLA-protected leave and as such, Defendant's must be denied.

### v. DEFENDANT'S "LEGITIMATE" REASON TO TERMINATE PLAINTIFF IS PRETEXTUAL

Any reason for Plaintiff's termination is nothing more than pretext. The temporal proximity of the adverse employment actions taken in response to and against Plaintiff for engaging in protected activity is evidence of pretext. Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998) (concluding that "language…showing some [retaliatory] animus, may be significant evidence of pretext once plaintiff has set out a prima facie case."); Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (causation is met by close temporal proximity between the statutorily protected activity and adverse employment action).

By subjecting Plaintiff to inexplicable and sporadic discipline decades apart (*i.e.,* 2004, 2018/2019), evaluated by manipulated, subjective "professionalism" metrics for

which Plaintiff was targeted and subjected to disparate treatment unlike any other employee, adverse employment action directed toward Plaintiff after timely submission of his FMLA certification paperwork after requesting FMLA leave in the form of administrative suspension, Smith admittedly made the termination decision just two (2) days after Plaintiff timely submitted his requisite FMLA certification paperwork subsequent to his FMLA request to Defendant, and ultimately, Plaintiff's retaliatory termination on February 25, 2019—all after Plaintiff's statutorily protected activity at his management meeting (with Smith and Stafford) on February 12, 2019, are causally related to protected activity undertaken by Plaintiff requesting FMLA leave and exercising his rights under the FMLA. ECF No. 23-2 at 79:23-25, 57:11-13, 77:9-18, 27:21-24, 111:2-22, 45:15-24, 115:21-23; 152:18-19, 66:22-67:8, 69:11-15; *Ex. A* at 12-16, 18, 39-44, 46-50, 52-53, 56-62. The sole reason behind Plaintiff's unlawful termination was based on retaliatory animus based on Plaintiff exercising his rights under the FMLA. *Ex.* A at ¶ 50-51.

Defendant chose not to adhere to its obligations under the FMLA. Defendant is therefore liable to Plaintiff for FMLA violations and the ratification of these decisions by Defendant. Such evidence of pretext obviates any legitimate reason for Plaintiff's termination proffered by Defendant and defeat summary judgment.

For the reasons set forth above, Plaintiff, ANDREW DOWLER, respectfully requests that the Court deny Defendant's Motion, in full, and in favor of Plaintiff on all claims in the Complaint.

Dated: July 12th, 2021.

Respectfully submitted,

**By:** */s/ Alexander T. Harne*
Alexander T. Harne, Esq.
Florida Bar No.: 126932
Richard Celler Legal, P.A.
10368 W. State Rd. 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
aharne@floridaovertimelawyer.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July 2021, a true and correct

copy of the foregoing has been furnished to all counsel of record.

*/s/ Alexander T. Harne*
Alexander T. Harne, Esq.