UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW DOWLER,

     Plaintiff,

v.                           Case No. 8:20-cv-2530-VMC-AAS

GEICO GENERAL INSURANCE
COMPANY,

     Defendant.
_____/

**<u>ORDER</u>**

This matter comes before the Court upon consideration of Defendant GEICO General Insurance Company's Motion for Summary Judgment (Doc. # 23), filed on June 10, 2021. Plaintiff Andrew Dowler responded on July 12, 2021. (Doc. # 26). GEICO replied on July 21, 2021. (Doc. # 28). For the reasons set forth below, the Motion is granted.

**I.**   **<u>Background</u>**

Dowler was employed by GEICO from 2001 to 2019 – first as a service counselor, and later as a procedures analyst. (Doc. # 23-2 at 17:17-23, 20:4-9). In the early morning of February 11, 2019 – a workday – Dowler was involved in a motor vehicle accident. (Id. at 83:16-21). Thereafter, an ambulance transported Dowler to a hospital, where he was treated and diagnosed with a concussion. (Id. at 84:13-14, 85:24-86:1;

1

Doc. # 23-3 at 51-59; Doc. # 23 at 7 n.1). According to Dowler, "Physically, I didn't really have a scratch, but . . . it was very hard to think." (Doc. # 23-2 at 85:24-25).

While at the hospital, Dowler attempted to use his cellphone, but he "could not operate the phone." (Id. at 86:3-8). Dowler remembered trying to press buttons, but only seeing "flashes." (Id.). At his deposition, Dowler testified that because he was scheduled to work that day, he attempted to inform his supervisor, Tiffany Vilches, of the accident. (Id. at 26:2-4, 99:2-4). To do so, Dowler hoped to send her a photo of his hospital bracelet. (Id. at 103:21-23). Instead, Dowler responded to a text message Vilches had sent the week prior:



(Doc. # 23-3 at 62). Immediately after Dowler responded at

least partially incoherently, he sent Vilches a pornographic image "of a male's nude genitals being held in a hand." (Id.; Doc. # 23 at ¶ 14). About an hour after sending the image, and approximately two hours after being admitted, Dowler was discharged from the hospital. (Doc. # 23-3 at 62; Doc. # 23-2 at 88:7-25). A few hours later, Dowler followed up, texting Vilches only: "I am in the ER." (Doc. # 23-11 at 2). According to Dowler, he unintentionally sent Vilches the image, and did not realize until long after that he had done so. (Doc. # 23-2 at 94:2-4). Dowler further testified that he is gay and that Vilches knew this. (Id. at 101:15-16).

Vilches, however, believed that Dowler sent the pornographic image intentionally. (Doc. # 23-4 at 27:6-8). Vilches assumed that the portion of the incoherent text message referring to an "authoritative grasp" was connected to the image. (Id. at 28:21-29:5). Vilches testified that she felt "[d]isgust, panic, [and] anxiety." (Id. at 30:5-6). Vilches considered the message sexual harassment. (Id. at 48:13-18). Although Vilches was aware that Dowler was previously married to a man, she explained: "I mean just because someone has a certain sexual orientation, we live in a very modern time. Just because he was married to a man doesn't mean that he wasn't also interested in women." (Id.

3

at 43:18-22). Thereafter, Vilches notified her manager, Carmen Smith, of the messages, and later blocked Dowler's cellphone number. (Id. at 25:14-16, 28:13, 30:16-17).

After Smith arrived at work that same morning, she advised GEICO's human resources department of the incident. (Doc. # 23-7 at ¶ 6). Human resources supervisor Tynetta Settles and human resources compliance specialist Tracy Stafford then each interviewed Vilches and Smith. (Doc. # 23-4 at 45:21-25; Doc. # 23 at ¶¶ 23, 25; Doc. # 26 at 8). According to Smith, "and on advice from Stafford," she "attempted to contact Dowler to get his statement about the incident, but [] was unsuccessful." (Doc. # 23-7 at ¶ 9). According to Dowler, however, he did not receive a call from Smith that day. (Doc. # 26 at 8; Doc. # 26-2 at ¶ 35). Later that day, Smith avers that she "learned from Stafford that [regional vice president] Pionne Corbin agreed that it was appropriate to terminate Dowler's employment because his act of sending a nude photograph to Vilches was a clear violation of company policies." (Doc. # 23-7 at ¶ 10).

The next day, Dowler returned to work, at which point he met with Stafford and human resources manager Ann Marie LoCascio. (Doc. # 23-2 at 110:24-111:17; Doc. # 23-8 at 45:10-24; Doc. # 23 at ¶ 31; Doc. # 26 at 9). According to Dowler,

4

the purpose of the meeting was "to discuss his need for
[Family Medical Leave Act ("FMLA")] leave and to provide
[them] with proper documentation from his physician." (Doc.
# 26 at 9; Doc. # 26-2 at ¶ 40). He avers that the meeting
began with him explaining the car accident and the
"symptomology arising from [his] severe head injury for which
[he] necessitated FMLA leave for further evaluation,
treatment, testing, appointments, and diagnostics associated
therewith." (Doc. # 26-2 at ¶ 41). However, LoCascio testified
that the meeting concerned the pornographic image:

> Q. What did you say to Mr. Dowler in that meeting
> on February 12th?
>
> A. I explained to Mr. Dowler that he was being
> placed on administrative leave [and] that we were
> conducting an investigation. I told him that at the
> conclusion of that investigation if there is no
> wrongdoing found, his time away from our company
> would be compensated and he would return to our
> company. If there was wrongdoing found, then that
> day effectively would be his last date of
> employment with our company.

(Doc. # 23-8 at 45:15-24). Thus, Dowler was notified at the
meeting that he was on administrative leave. (Id.).

Shortly after the meeting, Dowler formally applied for
medical leave. (Doc. # 23-10; Doc. # 23 at ¶ 36; Doc. # 26 at
9-11). Dowler had until February 27, 2019, to file his
physician's certification. (Doc. # 23-10 at 2). But before

Dowler completed his application, his employment at GEICO was terminated. (Doc. # 23-5 at 29:2-3). On February 14, 2019, Smith drafted a "termination memorandum" explaining the incident and outlining GEICO's reasons for terminating Dowler's employment. (Doc. # 23-11). The memorandum explained that the pornographic image Dowler sent to Vilches violated GEICO's code of conduct and policies:

> These actions are a direct violation of our Code of Conduct, which states, in part we are to: ". . . Maintain an atmosphere of mutual respect by and for all associates and applicants. Associate behavior must be professional, courteous and friendly and not create what a reasonable person would consider to be an intimidating, hostile or offensive work environment to each other and to our internal and external customers."

> In addition, your actions violated our Fair Workplace policy which states, "Sexual harassment may include verbal, written or physical conduct of a sexual nature engaged in by a person of the same sex as well as of the opposite sex. Comments or behavior which intimidate, ridicule or demean an associate's status based on gender may also constitute sexual harassment. Sexual harassment is considered a form of associate misconduct and individuals engaging in sexual harassment (including management associates who knowingly allow such behavior to continue) will be subject to corrective action, up to and including termination of employment."

(Id. at 2-3). According to Smith, she "made the decision to terminate Dowler's employment based solely on his act of sending the nude photograph to Vilches, . . . and not based

6

on [his] request for FMLA leave." (Doc. # 23-7 at ¶ 15). On February 25, 2019 – after Smith received approval from GEICO's corporate human resources department – she notified Dowler that his employment was terminated, effective February 12, 2019. (Id. at ¶ 14). "During the phone call, [Smith] offered Dowler the option to resign, but [he] declined." (Id.).

Dowler initiated this action on October 28, 2020. (Doc. # 1). The complaint includes the following claims against GEICO: unlawful interference under the FMLA (Count I), and unlawful retaliation under the FMLA (Count II). (Id. at 4-5). GEICO filed its answer on November 20, 2020, and the parties then proceeded with discovery. (Doc. ## 11; 14). Now, GEICO moves for summary judgment in its favor. (Doc. # 23). Dowler has responded (Doc. # 26), and GEICO replied. (Doc. # 28). The Motion is ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the

non-moving party's favor. Shotz v. City of Plantation, 344
F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder
evaluating the evidence could draw more than one inference
from the facts, and if that inference introduces a genuine
issue of material fact, the Court should not grant summary
judgment. Samples ex rel. Samples v. City of Atlanta, 846
F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's
response consists of nothing "more than a repetition of his
[conclusory] allegations," summary judgment is not only
proper, but required. Morris v. Ross, 663 F.2d 1032, 1034
(11th Cir. 1981).

## III. **Analysis**

In its Motion, GEICO seeks an entry of judgment in its
favor on both counts of the complaint. (Doc. # 23 at 13, 21).
The Court will begin by addressing Dowler's retaliation
claim, followed by his interference claim.

### A. **FMLA Retaliation**

First, GEICO moves for summary judgment on Count II –
Dowler's claim for unlawful retaliation under the FMLA. (Doc.
# 23 at 13). GEICO argues that Count II "fails because the
investigation for termination due to his misconduct was
underway before he requested FMLA leave, and there is no
evidence that his request for FMLA leave had any impact on

the investigation or decision to terminate his employment."
(Id.). Dowler responds that there is a "causal connection
between his statutorily protected activity and adverse
employment action" and that GEICO's reason for terminating
him was pretextual. (Doc. # 26 at 18-20).

"In an FMLA retaliation claim, unless there is direct
evidence of the employer's retaliatory intent, this Court
employs the burden-shifting framework established by the
Supreme Court in McDonell Douglas Corp. v. Green, 411 U.S.
792 (1973)." Schaaf v. Smithkline Beecham Corp., 602 F.3d
1236, 1243 (11th Cir. 2010). Here, the parties agree there is
no direct evidence of retaliation. (Doc. # 23 at 13; Doc. #
26 at 18). Accordingly, the plaintiff must show that: "(1) he
engaged in an activity protected by the FMLA; (2) he suffered
an adverse employment action; and (3) the employer's decision
was causally related to the protected activity." Pecora v.
ADP, LLC, 232 F. Supp. 3d 1213, 1221 (M.D. Fla. 2017) (citing
Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1268 (11th
Cir. 2008)). "Once the employee establishes a prima facie
case of retaliation, the burden shifts to the employer 'to
articulate a legitimate reason for the adverse action.'"
Martin, 543 F.3d at 1268 (quoting Hurlbert v. St. Mary's
Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006)).

"If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence 'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Id. (citation omitted).

Here, Dowler easily satisfies the first two elements of the prima facie case. Dowler submitted a request for medical leave under the FMLA, and GEICO terminated his employment. (Doc. # 26-2 at ¶¶ 40-41; Doc. # 23-10; Doc. # 23-8 at 45:15-24; Doc. # 23-11). And, GEICO challenges only the causal connection between Dowler's request and his termination. (Doc. # 23 at 23 ("For purposes of this motion, GEICO does not dispute that Dowler engaged in protected activity when he applied for FMLA leave on February 12, 2019. Nor does GEICO dispute that Dowler's termination constitutes an adverse employment action.")).

Dowler fails to show that the adverse employment action GEICO took against Dowler was causally related to his request for medical leave. Indeed, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does

not suffice to show causation." Pecora, 232 F. Supp. 3d at 1221 (quoting Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006)). Here, Dowler relies solely on temporal proximity to show causation. (Doc. # 26 at 18). Yet, the undisputed facts demonstrate that GEICO began its investigation into Dowler before his request for medical leave. Early in the morning of February 11, 2019, Vilches informed her manager, Smith, of the messages and pornographic image Dowler sent her. (Doc. # 23-4 at 25:14-16, 28:13, 30:16-17; Doc. # 23-5 at 40). Thereafter, Smith contacted GEICO's human resources department, which interviewed both Smith and Vilches. (Doc. # 23-7 at ¶ 6; Doc. # 23-4 at 45:21-25). Smith avers that on that day, she was informed that GEICO's regional vice president "agreed [] it was appropriate to terminate Dowler's employment because his act of sending a nude photograph to Vilches was a clear violation of company policies." (Doc. # 23-7 at ¶ 10). Although Dowler disputes this fact, he provides no citation or relevant basis for doing so. (Doc. # 26 at 6-8). And, even without this fact, it is undisputed that GEICO began its investigation into the pornographic image on February 11, 2019, and that Dowler did not request medical leave until the next day. (Doc. # 23 at ¶¶ 22-23, 25; Doc. # 26 at 8; Doc. 26-2 at ¶ 40).

12

Thus, Dowler has failed to establish causation or a prima facie case for retaliation under the FMLA. See Nelson v. Americold Logistics, LLC, No. 1:18-cv-04846-SCJ-LTW, 2020 WL 1809744, at *4 (N.D. Ga. Feb. 11, 2020) ("When an employee engages in misconduct that triggers a process leading to his termination, the mere fact that he subsequently engaged in a protected activity does not establish causation."), report and recommendation adopted, No. 1:18-cv-04846-SCJ, 2020 WL 1799945 (N.D. Ga. Mar. 4, 2020); see also Schoebel v. Am. Integrity Ins. Co. of Fla., No. 8:14-cv-426-JDW-AEP, 2015 WL 4231670, at *2-3 (M.D. Fla. July 10, 2015) (finding that the employee failed to establish causation because the e-mails constituting her misconduct were discovered prior to the employer taking any adverse employment action).

But even assuming Dowler established such a prima facie case, GEICO has offered a legitimate reason for terminating his employment – the pornographic image he sent to Vilches. (Doc. # 23 at 18). According to GEICO, this constituted "sexual harassment" and violated its code of conduct and policies. (Id.). Sending such a pornographic image to one's supervisor is a legitimate, non-retaliatory reason to terminate an employee. See Meyer v. Lincare Inc., No. 2:12-cv-754-TFM, 2013 WL 5657449, at *9 (M.D. Ala. Oct. 16, 2013)

("Lincare asserts that Meyer was terminated for . . . making suggestive comments to a male employee. Thus, the defendant has articulated a legitimate, non-discriminatory reason for terminating the plaintiff.").

Thus, the burden shifts back to Dowler to "introduce significantly probative evidence showing that the asserted reason is merely pretext for discrimination." Gillman v. Okaloosa County, 58 F. Supp. 3d 1305, 1311 (N.D. Fla. 2014). "Pretext is only proven if [the plaintiff shows] both that the reason was false, and that discrimination or retaliation was the real reason behind the challenged action." Brisk v. Shoreline Found., Inc., 654 F. App'x 415, 416 (11th Cir. 2016) (citations omitted). The plaintiff must provide "concrete evidence in the form of specific facts showing that the defendant's proferred reason was pretextual." Smith v. Constr. Datafax, Inc., 871 F. Supp. 2d 1226, 1239 (N.D. Ala. 2012) (internal quotation marks and citation omitted). "A plaintiff may show pretext 'either by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation is unworthy of credence." Gillman, 58 F. Supp. 3d at 1311 (citation omitted).

Dowler contends that GEICO's stated reason for his

termination is pretext because of "[t]he temporal proximity of the adverse actions taken in response to and against [Dowler] for engaging in protected activity." (Doc. # 26 at 19). However, the Court has already explained that the pornographic image was sent to Vilches before Dowler's suspension and termination. (Doc. # 23-4 at 25:14-16; 28:13, 30:16-17). And, the investigation into this conduct began prior to these adverse employment actions. (Doc. # 23-7 at ¶ 6; Doc. # 23-4 at 45:21-25). Dowler has provided no other basis that could convince a reasonable factfinder that GEICO's reason for terminating him was pretextual. To the extent Dowler makes a passing argument that GEICO has discriminated against him through "inexplicable and sporadic discipline," the Court finds this argument unavailing and unsupported by the facts. (Doc. # 26 at 19-20).

Thus, the Motion is granted as to Count II. See Pecora, 232 F. Supp. 3d at 1224-26 ("Defendant's second point to show pretext is duplicative of his prima facie causation argument and need not be addressed at length. As discussed, temporal proximity . . . alone is insufficient to create a genuine dispute of material fact about FMLA retaliation when the evidence shows that the employer had decided to take the adverse employment action before learning of the employee's

protected FMLA leave. . . . Had Plaintiff made a prima facie case of FMLA retaliation, which he has not, Defendant has proffered legitimate, nondiscriminatory reasons for the Final Warning, and Plaintiff has failed to demonstrate that those reasons were pretext. Defendant has therefore demonstrated the absence of any genuine dispute of material fact regarding Plaintiff's FMLA retaliation claim and is entitled to judgment as a matter of law on that claim.").

### B. **FMLA Interference**

Next, GEICO moves for summary judgment in its favor on Count I – Dowler's claim for unlawful interference under the FMLA. (Doc. # 23 at 21). GEICO argues that Count I fails because "the evidence establishes as a matter of law that [it] would have terminated [Dowler] regardless of his request for . . . FMLA leave." (Id. at 21-22). Dowler responds that he has successfully stated a prima facie case for interference under the FMLA. (Doc. # 26 at 13-16).

"The FMLA makes it illegal 'for any employer to interfere, restrain, or deny the exercise of or the attempt to exercise, any right provided under the [Act].'" Pereda v. Brookdale Senior Living Cmtys., Inc., 666 F.3d 1269, 1273-74 (11th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)). "An interference claim requires an employee to demonstrate only

16

that he is entitled to an FMLA benefit, and that the employer interfered with that benefit." Pecora, 232 F. Supp. 3d at 1226-27. "The employee need not allege that his employer intended to deny the benefit, because 'the employer's motives are irrelevant.'" Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010) (citation omitted). But, "[w]here the claim is based on an employee's termination, . . . an employer may affirmatively defend against the claim by establishing that it would have terminated the employee regardless of [his] request for or use of FMLA leave." Batson v. Salvation Army, 897 F.3d 1320, 1331 (11th Cir. 2018).

Here, even viewing the evidence in the light most favorable to Dowler, the Court finds that GEICO has demonstrated that it would have terminated Dowler regardless of his request for medical leave. No reasonable juror could conclude otherwise. As mentioned, Dowler sent Vilches the pornographic image before requesting leave. (Doc. # 23-4 at 25:14-16; 28:13, 30:16-17). Vilches informed Smith of the message and GEICO began its investigation into the incident before Dowler even returned to the office. (Doc. # 23-7 at ¶ 6; Doc. # 23-4 at 45:21-25). Thus, GEICO determined that it was "appropriate to terminate Dowler's employment" before any protected activity occurred. (Doc. # 23-7 at ¶ 10); see

Montgomery v. Ion Media Mgmt. Co., No. 8:10-cv-429-VMC-AEP, 2011 WL 1791294, at *11 (M.D. Fla. 2011) ("Ion made the decision to terminate Montgomery on October 15, 2009. Ion was not required to change its course with respect to Montgomery's termination because she sought FMLA leave. She did not become insulated from termination on October 14, 2009, when she first voiced the possibility of her need for FMLA leave nor did she become insulated from termination . . . when she formally requested such leave.").

To the extent that Dowler argues for the first time in his response that GEICO interfered with his rights under the FMLA in any manner other than by terminating him, such allegations are absent from the complaint, and are therefore disregarded. (Doc. # 1); see Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (affirming the district court's dismissal of a claim because it was not pled in the complaint). Even so, for the same reasons already noted, the record shows that GEICO would have suspended Dowler regardless of his request for FMLA leave.

Therefore, the Motion is granted as to Count I as well. See Bartels v. S. Motors of Savannah, Inc., 681 F. App'x 834, 841 (11th Cir. 2017) ("Accordingly, there is no genuine dispute of material fact regarding SMA's non-FMLA reason for

18

terminating Bartels. We affirm the district court's ruling on Bartels's interference claim."); see also Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871-72 (8th Cir. 2010) (affirming summary judgment in the employer's favor on an FMLA interference claim because the employer sufficiently established that it would have terminated the employee notwithstanding her exercising her FMLA rights).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant GEICO General Insurance Company's Motion for Summary Judgment (Doc. # 23) is **GRANTED.**

(2)   The Clerk is directed to enter judgment in favor of GEICO and against Plaintiff Andrew Dowler as to all claims in the complaint. (Doc. # 1).

(3)   Thereafter, the Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of August, 2021.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE